IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM BOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:02CV1335-W |
| ) | (WO) |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION AND ORDER**

William Box brings this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of a decision by the Commissioner of Social Security finding that his disability had ceased and terminating his Supplemental Security Income benefits. The matter is before the Court on consent pursuant to 28 U.S.C. § 636(c)(1). The court concludes that the decision of the Commissioner is due to be reversed and this case remanded to the Commissioner for further proceedings.

**Administrative History**

Plaintiff was previously determined to be disabled and entitled to Supplemental Security Income on the basis of an application filed on his behalf by the Florida Department of Children and Family Services on September 2, 1998. (R. 78, 130-134).[1] In

---

[1] Plaintiff was born on October 26, 1981. He was taken into custody by the State of Florida in 1988 due to allegations of abuse and neglect, and was placed in foster care. (R. 310). In August

November 1998, the Commissioner determined that plaintiff suffered from mild mental retardation, attention deficit disorder and post-traumatic stress disorder and that the severity of plaintiff's impairments met the requirements of the listing at § 112.05E (Mental Retardation - Child). (R. 78).

Pursuant to 42 U.S.C. § 1382c(a)(3)(H)(iii), the Commissioner reevaluated plaintiff's disability in accordance with adult standards after plaintiff reached the age of 18. By notice dated February 8, 2000, the Social Security Administration notified plaintiff that he was not "disabled" as defined by the Social Security Act as of February 2000 and that his last SSI payment would be made in April 2000. (R. 93-94A). Plaintiff filed a request for reconsideration, which was denied. (R. 95-101). Plaintiff requested a hearing before an administrative law judge, and a hearing was conducted on February 26, 2002. (R. 36-77, 102-05). On March 28, 2002, the ALJ issued a decision concluding that plaintiff is not disabled within the meaning of the Social Security Act. (R. 14-24). On October 8, 2002, the Appeals Council denied plaintiff's request for review. (R. 6-8).

## Background

In 1991, Dr. Claudia L'Engle conducted a pre-adoptive psychological evaluation of

---

1991, he moved to a foster home for prospective adoption. (R. 295). At age 12, after plaintiff became threatening and violent, he was admitted to a psychiatric unit for three months. At the conclusion of his inpatient treatment, he was discharged to Boys Town in Florida, where he remained until 2000. (R. 333-34, 406). Plaintiff's SSI application was filed by Hope Hall, plaintiff's case worker. (R. 141, 168). In February 2000, plaintiff moved to Dothan, Alabama to live with his mother. (R. 74-76).

plaintiff to determine his current levels of intellectual, academic and psychological functioning. She determined that he was functioning in the Low Average range of intellectual abilities and recommended individual psychotherapy due to the negative effects plaintiff was suffering from his early experiences with abuse and neglect. She further recommended referral to a pediatric neurologist because of the large discrepancy between plaintiff's scores in the verbal and performance areas in psychological testing. (R. 295-302). Dr. William Zinser, a pediatric neurologist, evaluated plaintiff in April and June, 1992. Dr. Zinser did not find evidence of a neurologic syndrome but stated his belief that plaintiff has "an organic personality and would benefit from further psychiatric evaluation and the possibility of psychopharmacological intervention." He noted that plaintiff appeared to have "mild attention deficit and hyperactivity" (R. 303-07). In a psychological assessment rendered on November 16, 1992, Linda Samimi-Riley diagnosed plaintiff with post traumatic stress disorder. (R. 309-14).

In April 1993, plaintiff was admitted to The Psychiatric Center at Tallahassee Memorial because of "absolute uncontrolled behavior," "increasing incidences of 'bizarre behavior' and emotional/psychological concerns." (R. 333, 337). Plaintiff was discharged three months later with a final diagnosis of "post-traumatic stress disorder, severe" and "attention deficit hyperactivity disorder, much better controlled." (R. 333).

Plaintiff received psychiatric treatment from Dr. Lewis Brodsky from 1993 until 1999.

(R. 357-385). In an evaluation in September 1993, Dr. Brodsky diagnosed attention deficit disorder with hyperactivity, under reasonably good control, chronic post-traumatic stress disorder, partial seizure disorder (still to be ruled out despite normal EEG) and organic personality syndrome. (R. 381).

After a psychological examination conducted in July 1997, when plaintiff was fifteen years old, Dr. Larry Kubiak noted plaintiff's behavioral, emotional and academic problems and diagnosed attention deficit hyperactivity disorder, post traumatic stress disorder by history, conduct disorder (mild), and borderline intellectual functioning. (R. 327-332). In January 1998, Dr. Kubiak again evaluated plaintiff at Dr. Brodsky's request. Plaintiff's IQ scores on the WISC-III were 64 (verbal), 73 (performance) and 66 (full scale). Dr. Kubiak diagnosed ADHD by history, cognitive disorder, NOS, and mild mental retardation. (R. 315-26). On January 13, 1999, Dr. Brodsky re-evaluated plaintiff. Plaintiff's house-parent reported that his behavior and mood were relatively stable, but that he had a problem with being "off task," that he had more periods of "staring into space," and "some intrusive thoughts of his abuse history." Dr. Brodsky's diagnostic impression was ADHD combined type, chronic PTSD, mood disorder due to traumatic brain injury (bipolar type) and seizure disorder due to traumatic brain injury. (R. 358-360).

In January 2000, Paul Deitchman, Ph.D., conducted a consultative psychological examination.  Dr. Deitchman administered Wechsler Adult Intelligence Scale testing

4

(WAIS-III). Plaintiff's IQ scores were 69 (verbal), 77 (performance) and 70 (full scale). Dr. Deitchman's diagnostic impressions were: History of Attention Deficit-Hyperactivity Disorder (by report), (Provisional) Mood Disorder (to be corroborated by treating professional), and Borderline Intellectual Functioning. (R. 407-08).

In March and April 2000, after plaintiff moved to Dothan, he was treated by Dr. Michael O'Brien, once seeking refill prescriptions for his medication, and once for cough and congestion. (R. 422-23). Between May and September 2000, plaintiff was treated by Dr. Barry Taylor, primarily for follow-up for Attention Deficit Disorder. (R. 440-445). Dr. Taylor referred plaintiff to SpectraCare, where a treatment plan was developed for his diagnoses of attention deficit disorder and mild mental retardation. Plaintiff attended group therapy at SpectraCare in June and July 2000. (R. 425-33).

Plaintiff completed high school in June 2000, receiving a certificate of attendance in special education classes. (R. 64, 76, 280, 435).

On September 5, 2000, Melanie Cotter, Ph.D., conducted a consultative psychological examination. Dr. Cotter's diagnostic impressions were borderline intellectual function, ADHD, by history, and residual post-traumatic stress symptoms. Dr. Cotter concluded, "Patient appears capable of gainful employment but this will likely require vocational training given patient's borderline ability and neurologic/organic difficulties and limited social skills." (R. 434-38).

**Standard of Review**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

**Discussion**

Plaintiff argues that the decision of the ALJ concluding that he is not disabled is not supported by substantial evidence because: (1) the Commissioner failed to properly evaluate plaintiff's subjective complaints; (2) the Commissioner erred in finding plaintiff's

past work to be relevant; and (3) the Commissioner failed to properly evaluate the evidence submitted to him by plaintiff's representative after the hearing. Plaintiff further argues that new evidence provides a basis for remand.

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*. If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). After considering the testimony, the ALJ may reject the claimant's subjective complaints. However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony. Id. "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[2] "The credibility determination does not need

---

[2] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

to cite "'"particular phrases or formulations'" but it cannot merely be a broad rejection which is "'not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'"" Dyer, *supra*, 395 F.3d at 1210 (citations omitted).

A critical issue in this case is whether the claimant is capable of sustaining sufficient concentration to engage in substantial gainful activity. At the hearing, plaintiff's mother, Caroline Floyd, testified:

> [H]e has a problem of concentrating because he can be cooking and he'll walk away from the stove and leave stuff on. And I'll have to tell him, "William, did you cut the stove off." I have to tell him when to take his medicine. I have to tell him to take a bath. . . . I have to remind him what he needs to do.

(R. 74-75). When the ALJ asked her whether she thought plaintiff could work anywhere at any kind of a job, she responded:

---

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements. The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

> If they could keep his mind occupied to where he could – you know, you have to monitor him, though, because like I said, he'll leave stuff on the stove. My trailer almost caught on fire because he left a pot of grease on the stove. And if my husband hadn't come out of his bedroom where he was sleeping – the house was filled with smoke and he come out and William had walked outside and left the pot on.

(R. 77). The ALJ asked the vocational expert whether, if the testimony of the claimant and other witnesses were deemed to be fully credible, a person with limitations as stated by the witnesses could do the claimant's past work or other work. The VE testified as follows:

> A    Okay. Primarily, based upon the testimony of the individual's mother, I would be of the opinion that there would be a, you know, not a lot of possibility for work due to the required amount of supervision that she indicated was necessary just to keep a person on task.
>
> Q    Okay. Couldn't maintain the persistence and concentration and pace and that sort of thing?
>
> A    Yes, sir.

(R. 50). It is apparent that the ALJ concluded that plaintiff's mental impairment is sufficiently severe to give rise to difficulties in maintaining concentration, as the ALJ adopted the findings set forth in a mental residual functional capacity assessment completed by Dr. Mark Williams, a non-examining psychologist. (R. 22, 448-65). Dr. Williams concluded that plaintiff was moderately limited in his ability to: (1) carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; and (4) complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 448-49, 462). Under these circumstances, the ALJ was required to articulate specific reasons for rejecting Floyd's testimony regarding plaintiff's symptoms.

In a summary of the evidence, the ALJ acknowledges Floyd's testimony above. (R.15-16). He states in his analysis of the residual functional capacity that he has "considered the claimant's subjective complaints, including those regarding pain, in accordance with 20 C.F.R. § 416.929, Social Security Ruling 96-7p, and applicable Eleventh Circuit case law." (R. 22). In his findings, he states that '[t]he claimant's allegations of pain and functional limitations are not credible." (R. 23).[3] The ALJ does not explicitly conduct any analysis of the credibility of Floyd's testimony, however, and does not further mention it. The court recognizes that the ALJ is not required to cite "particular phrases or formulations." Dyer, *supra*. However, the decision in the present case is not sufficient to apprise the court of the reasons for the ALJ's rejection of Floyd's testimony regarding plaintiff's inability to maintain concentration so that those reasons may be evaluated

---

[3] Viewed in context, these statements appear to be little more than boilerplate. Other than responding "sometimes" when asked by the ALJ if he had any headaches (R. 67), the plaintiff did not testify to experiencing pain. Although the ALJ stated that plaintiff's "allegations of functional limitations are not credible," the ALJ found that plaintiff suffered from some functional limitations.

against the substantial evidence standard.[4]   Thus, the decision of the Commissioner is due to be reversed.[5]

---

[4] The court disagrees with the Commissioner's argument that the ALJ's analysis of the evidence (see Commissioner's brief, pp. 5-6) is a sufficient articulation of reasons for the ALJ's credibility determination. (Compare analyses upheld in Dyer, *supra*, 395 F.3d at 1211-12 and Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) with the analysis in the present case.)

[5] The court declines to order an award of benefits, however, because of an ambiguity created by the hearing testimony which the Commissioner should have an opportunity to resolve. For purposes of addressing the issue of whether the ALJ properly applied the pain standard, the court accepts that the ALJ did reject Floyd's testimony, since the Commissioner does not argue to the contrary and instead contends that the ALJ adequately supported his credibility determination. However, upon a careful review of the record and the ALJ's decision, the court cannot conclusively determine whether the ALJ credited or rejected Floyd's testimony in reaching his conclusion that plaintiff is not disabled. It is possible that, instead, he partially rejected the testimony of the vocational expert. The ALJ adopted Dr. Williams' October 10, 2000 mental RFC assessment, Exhibit 15-F. At the hearing, the ALJ heard expert testimony from a clinical psychologist, Dr. McKeown. Dr. McKeown testified that he agreed with the limitations set forth in Dr. Williams' RFC assessment. (R. 45-46). The ALJ then asked:

> . . . You've heard his mother testify with difficulties with concentration and so forth. Do you think that those limitations are adequately reflected, based on your evaluation of the whole record? But I mention her because she mentioned those in particularly [sic]. But do you think those are adequately addressed in 15F?

(R. 46). Dr. McKeown responded, "Yes, sir. I do." (Id.).

The VE subsequently testified, in response to a hypothetical from the ALJ, that there were a significant number of entry-level, unskilled jobs at the light and medium exertional levels that a person with the mental limitations set out in Exhibit 15F could perform. (R. 49-50). The ALJ's conclusion that plaintiff has the residual functional capacity to perform jobs that exist in significant numbers in the national economy could, therefore, have resulted from his accepting Floyd's testimony and concluding that it was encompassed within the limitations set forth in Exhibit 15-F, as testified to by Dr. McKeown. If this is so, however, the ALJ's decision is not supported by substantial evidence because of the irreconcilable conflict created by the VE's testimony that there was "not a lot of possibility" for work if plaintiff's mother's testimony were accepted as credible.

11

**Conclusion**

For the foregoing reasons, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.[6]

A separate judgment will be entered.

DONE, this 15th day of November, 2005.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

The ambiguity created by the ALJ's failure to clearly address Floyd's testimony makes it difficult for the court to review the adequacy of his decision. However, because of the possibility that the ALJ actually credited Floyd's testimony, the court will reverse and remand for further proceedings.

[6] In view of this conclusion, the court will not fully discuss plaintiff's remaining arguments. However, the evidence of record is insufficient to support the ALJ's implicit determination that plaintiff's previous work as a cook at Sonic constituted substantial gainful activity. See Roberts v. Apfel, 27 F. Supp.2d 1295 (N.D. Ala. 1998); 20 C.F.R. § 416.960(b)(1)(past relevant work must be substantial gainful activity); § 416.974 (defining substantial gainful activity). Thus, the Commissioner may not rely on the ALJ's determination that plaintiff can perform his past work to support his conclusion that plaintiff is not disabled. Additionally, even if the Commissioner's decision were supported by substantial evidence, sentence six remand would be warranted on the basis of new evidence of plaintiff's termination from a vocational rehabilitation program due, in part, to his difficulty with sustaining attention. Further, the court concludes that the ALJ did not clearly deny plaintiff's counsel's requests that he keep the record open for additional evidence and, therefore, that he should have accepted and considered the additional evidence submitted to the ALJ by counsel two weeks after the hearing.